UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

TEAMSTERS LOCAL UNION NO. 340,   )
                                 )
        Plaintiff                )
                                 )
v.                               )     No. 2:13-cv-264-JDL
                                 )
KENNETH L. EATON and             )
CARL GUIGNARD,                   )
                                 )
        Defendants               )

### RECOMMENDED DECISION ON CROSS-MOTIONS FOR JUDGMENT ON ADMINISTRATIVE RECORD

The parties, a union local and two of its former officers and employees, disagree on the terms of a benefit plan in this ERISA action. I recommend that the court grant the plaintiff's motion for judgment on the administrative record and deny that of the defendants.

### I.  Factual Background

The following facts are taken from the parties' factual appendices and do not appear to be in dispute.

The plaintiff, Local 340, is a labor organization and an employer of certain employees, including full-time duly elected officers and business agents. Appendix, Plaintiff's Motion for Judgment on the Administrative Record for Judicial Review ("Plaintiff's Motion") (ECF No. 25), ("Pl. App."), at 11; Appendix, Defendants' Motion for Judgment on the Administrative Record for Judicial Review ("Defendants' Motion") (ECF No. 26), ("Def. App."), at [7]. Its executive board is authorized to conduct its affairs under its constitution and by-laws. Pl. App. at 11.

1

Defendant Eaton is a former full-time business agent and recording secretary of Local 340. Def. App. at [7]. Defendant Guignard is a former full-time business agent and secretary-treasurer of Local 340. *Id*.

Full-time employees of Local 340, including the full-time officers and business agents, have been, at all relevant times, covered by health and welfare plans maintained and administered by Northern New England Benefit Trust (NNEBT). Pl. App. at 13. The cost of this coverage is paid out of Local 340's general treasury, which is funded solely by the dues paid by members. *Id*.

Local 340's by-laws authorize the executive board to "from time to time provide the terms and conditions of employment for officers . . . including . . . health and welfare and retirement benefits" and to "from time to time provide changes therein[.]" Pl. App. at 11. In 2001, the executive board adopted the retiree health and welfare portion of a proposed "Severance Pay Plan of Teamster Union Local No. 340." *Id*.; Retiree Health & Welfare Plan of Teamsters Union Local No. 340 ("the Plan"), Administrative Record at 46-48.

NNEBT also provides a subsidized, pre-Medicare age retiree medical plan for Local 340 members who qualify. Pl. App. at 13. Under the plan adopted in 2001, qualified full-time officers and business agents, and their spouses, upon their retirements, could remain covered by the NNEBT plan that covers Local 340's full-time active employees. *Id*. The plan included a statement that the benefits provided were "non-forfeitable and non-alienable to the fullest extent permitted by governing law." Def. App. at [9]. *See* Administrative Record at 100-05.

On February 8, 2004, the executive board reaffirmed that "[a]ll qualified former full-time officers and business agents of Local 340[] shall continue to have their Health and Welfare paid as per the Executive Board action of January 14, 2001 and the Membership on February 11, 2001." Def. App. at [9]. The executive board used the same language in 2007 and 2010. *Id*. at [10].

2

On January 1, 2013, a completely new executive board was seated, Pl. App. at 14, as the entire executive board, including the defendants, had been ousted by the union election in the fall of 2012. Def. App. at [10]. Guignard notified the union via a letter dated December 8, 2012, that he intended to retire by January 1, 2013, and that he was selecting the health insurance benefit offered for qualified retired officers and business agents. *Id.* Eaton informed the union in a letter dated January 13, 2013, that he elected the health insurance coverage effective immediately. *Id. See* Administrative Record at 27.

At its meeting in July 2013, the executive board voted to modify the benefits available to individuals who qualified for post-employment retiree health and welfare benefits and to apply the modification retroactively. Pl. App. at 14. The modifications affect four individuals, including the two defendants. *Id*. at 15. According to the defendants, the modifications "eliminate[] Guignard's ability to receive health insurance" and "substantially reduce the coverage that Eaton would receive." Def. App. at [11].

## II. Discussion

This action presents a single issue: whether the defendants' interests in their health and welfare benefits as established by the 2001 plan were vested and thus could not be reduced or eliminated by the Local's new executive board in 2013, or, in other words, whether the plaintiff had the right, under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, "to modify unilaterally the retiree health insurance benefits of certain former employees and their respective spouses." Plaintiff's Motion at 1.

The parties agree that the matter at issue here is an employee welfare benefit plan rather than a pension benefit plan. *Id*. at 2; Defendants' Motion at 7. Under ERISA, welfare benefit plans are not automatically vested; pension benefit plans usually are. *Balestracci v. NStar Elec.*

3

*& Gas Co.*, 449 F.3d 224, 229-30 (1st Cir. 2006). However, an employer may contractually cede its right to amend and terminate a welfare benefit plan and provide retirees with vested welfare benefits that cannot be changed unilaterally. *Id*. at 230.

### A. Ambiguity

The plaintiff contends that the relevant plan language is ambiguous. Plaintiff's Motion at 3. The defendants agree, differing only in their position on the question of which party benefits from that ambiguity. Defendants' Motion at 10-13.

As the First Circuit has stated,

> The interpretation of the provisions of an ERISA benefit plan proceeds under federal substantive law, and is guided by common sense principles of contract interpretation, although principles from the law of trusts are employed in certain cases.
>
> The rules of interpretation of ERISA welfare benefit plans when dealing with unambiguous terms are uncontroversial. Under ERISA, unambiguous language in a plan is enforced according to its terms. The question of whether an ERISA plan term is ambiguous is generally a question of law for the judge.
>
> It is also the rule that ambiguity in a plan term does not necessarily foreclose summary judgment, as when the evidence presented about the parties' intended meaning is so one-sided that no reasonable person could decide the contrary.

*Balestracci*, 449 F.3d at 230 (citations and internal punctuation omitted). No presumption about vesting arises from the presence or absence in the plan of clear and express language on the point, and the First Circuit has rejected the argument that there can never be vesting unless there is a clear and express statement of such vesting. *Id*.

The plaintiff argues that, because the Plan does not contain any durational language, it is ambiguous on the question before the court, citing *Senior v. NStar Elec. & Gas Co.*, 449 F.3d 206 (1st Cir. 2006). Plaintiff's Motion at 4-5. The defendants agree. Defendants' Motion at 10.

## B. The Merits

The plaintiff finds evidence of its intent not to vest retiree health insurance benefits in its by-laws. Plaintiff's Motion at 6-7. When the relevant terms of a welfare benefits plan are ambiguous, a court may look to extraneous documents for this purpose. *Balestracci*, 449 F.3d at 230-31. Here, the plaintiff quotes a portion of Section 15(C) of its by-laws, which authorizes the executive board to "from time to time provide the terms and conditions of employment for officers . . . including . . . health and welfare and retirement benefits" and states that the board "may from time to time provide changes therein[.]" Administrative Record at 37; Plaintiff's Motion at 7. The plaintiff concedes that this section of the by-law is not referenced in the Plan, but cites *Senior* for the proposition that it may nonetheless be considered in this context. *Id*. at 8.[1]

The defendants rely, Defendants' Motion at 9-13, on language from the Plan, as set out in the plaintiff's policy book, specifically: "Participant shall be reimbursed for verified health insurance or related medical premium expenses up to a maximum of the then applicable cost of retiree coverage under Northern New England Benefit Trust or whatever other health fund or plan Local 340 is primarily affiliated with at the time of the reimbursement[,]" Administrative Record at 93; "[t]o the extent such coverage is available, Local 340 will offer to the qualified Participant and the Participant's spouse and surviving spouse coverage under any group health and welfare insurance plan in which Local 340 participate[,]" *id*.; "the Participant (or Participant's surviving spouse) shall be reimbursed for verified health insurance or related medical premium expenses up to a maximum of the then applicable cost of retiree coverage[,]" *id*. ; and "the Participant shall receive after becoming eligible for Medicare, as a retiree benefit for himself and his spouse and

---

[1] "Internal references in one document to another are often helpful in the processes of interpretation and adjudication, but the absence of such a reference does not make a document unusable in these processes or inadmissible in evidence. Its connection and relevancy can be established otherwise." 449 F.3d at 219-20.

5

surviving spouse, paid for by Local 340 (either directly or in the form of reimbursement made to the Participant), Medicare supplemental coverage[,]" *id*.

The plaintiff also relies on votes taken by its executive board in 2004 and 2007. Plaintiff's Motion at 9. In 2004, the following motion was passed by the executive board: "All qualified former full-time officers and business agents of Local 340 [] shall continue to have their Health and Welfare paid as per the Executive Board action of January 14, 2001 and the Membership on February 11, 2001." Administrative Record at 108. In 2007, an identical motion was adopted by the executive board. *Id*. at 110. In 2010, the executive board adopted the following language: "Local 340 shall continue to have retiree Health and Welfare coverage as per the Executive Board action of January 14, 2001 and the Membership action on February 11, 2001." *Id*. at 112.[2]

The plaintiff asserts that these votes would not have been required had the members of the board "believed that the retiree benefits provided for under the Plan were vested." Plaintiff's Motion at 9. It offers this observation as evidence that the benefits were not in fact vested. *Id*. at 9-10.

The defendants ask this court to adopt an inference drawn by the Sixth Circuit in *International Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Yard-Man, Inc.*, 716 F.2d 1476, 1482 (6th Cir. 1983), to the effect that "retiree benefits are in a sense 'status' benefits which, as such, carry with them an inference that they continue so long as the prerequisite status is maintained." *Id*.; Defendants' Motion at 11. Their assertion that "[t]he First Circuit Court of Appeals has neither accepted nor denied applying the *Yard-Man* inference," *id*. at 12, sails perilously close to error. In *Senior*, the First Circuit said:

> The plaintiffs rely on an old Sixth Circuit decision, *UAW v. Yard-Man*, 716 F.2d 1476 (6th Cir. 1983), which that circuit has since held does not stand for the proposition that there is a presumption in favor of vesting

---
[2] Neither side suggests a reason why these votes were apparently taken every three years.

> benefits. In *Yolton* [*v. El Paso Tenn. Pipeline Co*. 435 F.3d 571 (6th Cir. 2006)], the court said: "All that *Yard-Man* and subsequent cases instruct is that the Court should apply ordinary principles of contract interpretation." *Id*. at 580.

449 F.3d at 217. In a footnote, the First Circuit added that

> [i]t is doubtful that *Yard-Man* itself stands for the broad rule that plaintiffs ascribe to it. The "inference" was described as merely a "contextual factor buttress[ing] already sufficient evidence of such intent in the language of the agreement itself." [*Yard-Man*, 716 F.2d] at 1482. The court in *Yard-Man* relied, in the main, on "traditional rules of contract interpretation" to find that the contract was unambiguous.

*Id*. n.16. In addition, it noted, "[a] number of circuits have criticized *Yard-Man*, to the extent it can be read as supporting a presumption in favor of vesting." *Id*. n.17 (citing cases). The First Circuit's "view is that in a claim for benefits based on a labor agreement under the LMRA federal labor law creates no presumption regarding vesting." *Id*. at 218. In the instant case, which involves an employment contract that is not a labor agreement governed by the Labor Management Relations Act, there is even less reason to employ such a presumption.

As one court addressing a similar factual situation has observed, "many circuits have held that because vesting of welfare plan benefits constitutes an extra-ERISA commitment, an employer's commitment to vest such benefits is not to be inferred but must be stated in clear and express language." *Groover v. Michelin N. Am., Inc.*, 90 F.Supp.2d 1236, 1253 (M.D. Ala. 2000) (citing seven cases).

In the instant case, neither side has directed the court's attention to contract language or extrinsic evidence that unambiguously answers the question before the court. Indeed, the parties agree that the contract language is ambiguous. In such a situation, other courts have decline to enter summary judgment, referring the question to a fact-finder at trial. *E.g., id.* at 1256. However, the parties in this case have moved for judgment on the administrative record, not summary

7

judgment, and that distinction requires the court to resolve this dispute itself. *See, e.g., Ellis v. Unum Life Ins. Co. of Am.*, No. 2:13-cv-00080-JAW, 2014 WL 235212, at *2 (D. Me. Jan. 22, 2014).

Here, there is no express statement by the plaintiff in the Plan that it reserved the right to modify or terminate the Plan or any of its terms, *see, e.g., Dewhurst v. Century Aluminum Co.*, 731 F.Supp.2d 506, 513 (S.D. W.Va. June 24, 2010), although the excerpts from the plaintiff's by-laws upon which the plaintiff relies do appear to allow the plaintiff's executive board to change the terms of the type of benefits that are at issue here, but without any express authority to terminate such benefits entirely. In addition, the plaintiff has not attempted to show that the parties "understood how to vest an employee or retiree benefit when they chose to do so[,]" which the *Dewhurst* court found significant, *id*. at 518-19.

In *Tackett v. M & G Polymers USA, LLC*, 733 F.3d 589 (6th Cir. 2013), the Sixth Circuit upheld a district court's conclusion that the parties to a labor contract intended retiree benefits to vest where the contract provided that the employer would provide a "full Company contribution" to the cost of health-care benefits for employees who met age and term-of-service requirements, that employees who did not meet these requirements would be required to pay "the balance of the health care contribution," and eligibility for health-care benefits was tied to pension benefits, *id*. at 596, and no extrinsic evidence demonstrated an intent that the benefits not vest, *id*. at 600. The Sixth Circuit distinguished an earlier case in which the "full Company contribution" language was missing and the contract included a provision that the "rates of payment, coverages, and terms and conditions of the program were all subject to change by [the employer] at any time on reasonable notice." *Id*.

8

Here, the extrinsic evidence—the plaintiff's bylaws and the explicit vote of its executive board every three years after the Plan was adopted—suggest an intent that the retiree benefits not vest. The Plan itself appears to provide evidence that suggests an intent to vest: the statements that the plaintiff "will offer" the coverage, the retirees "shall be reimbursed" for premium expenses that they pay themselves for such coverage, and the retirees "shall receive" Medicare supplement coverage. Administrative Record at 81-82, 93. As the *Groover* court concluded after a thoughtful analysis, however, the use of the word "shall" is not a sufficient indication of an intent to vest welfare benefits to carry the day: "The court agrees with the result that other courts have reached when confronted with similar language in welfare benefits contracts; such language was found an insufficient indication of an unambiguous intent to vest welfare benefits." 90 F.Supp.2d at 1242-43 (citations omitted).

On balance, I conclude that the plaintiff has the better of the intent-to-vest argument.

### C. Retroactive Action

The defendants contend that, regardless of the vesting issue, they are entitled to the full health and welfare benefits provided to retirees by the Plan because the terms of such plans cannot be modified retroactively to affect retirees after they have retired. Defendants' Motion at 13-15. The plaintiff responds that all of the authority cited by the defendants in support of this contention involves collective bargaining agreements, and that the Plan involved in this case is not the result of, nor was it the subject of, collective bargaining. Plaintiff's Opposition to Defendants' Motion for Judgment on the Administrative Record for Judicial Review ("Plaintiff's Opposition") (ECF No. 27) at 3-7.

A review of the case law cited by the defendants confirms the plaintiff's position. Thus, in *Maurer v. Joy Techs., Inc.*, 212 F.3d 907 (6th Cir. 2000), the Sixth Circuit[3] applied its *Yard-Man* decision to support a conclusion that termination of a collective bargaining agreement does not terminate benefits created by it, if the benefits were intended to vest. *Id*. at 918. I have already recommended that the court find in this case that the benefits at issue did not vest, so *Maurer* provides no basis for the defendants' retroactivity contention.

Similarly, in *Weimer v. Kurz-Kasch, Inc.*, 773 F.2d 669 (6th Cir. 1985), the Sixth Circuit held that retirees were entitled to continue to receive benefits after the expiration of a collective bargaining agreement, if those benefits were vested, and may not be "bargained away" by a union. *Id*. at 672-73. And in *Yolton*, the Sixth Circuit stated expressly that an employer is free to modify or terminate any retiree medical benefits that are not vested. 435 F.3d at 578. The Seventh Circuit's ruling in *Zielinski v. Pabst Brewing Co.*, 463 F.3d 615 (7th Cir. 2006), was also based on a finding that the retirees involved has a vested right to prescription drug benefits. *Id*. at 617. Finally, in *United Steelworkers of Am., AFL-CIO v. Textron, Inc.*, 836 F.2d 6 (1st Cir. 1987), the only issue before the court was whether a preliminary injunction had properly been issued in an action contending that the employer was required to pay health and life insurance premiums for its retired employees under the terms of several collective bargaining agreements. *Id*. at 7. The First Circuit specifically declined to weigh the parties' conflicting arguments on the question of whether these benefits were vested. *Id*. at 9-10.

The defendants have not established that the plaintiff has subjected them to an impermissible retroactive modification of non-vested health and welfare benefits.

---

[3] The majority of the cases cited by the defendants in this connection, without pinpoint citations, come from the Sixth Circuit, the home of *Yard-Man*.

### D. The Anti-Cutback Rule

The defendants' final argument is that the plaintiff's "proposed reduction in retiree health insurance benefits" payable to them violates ERISA's "anti-cutback rule," found in 29 U.S.C. § 1054(g)(1). Defendants' Motion at 15. That statute provides, in relevant part: "The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(d)(2)) or 1441 of this title."

The plaintiff responds that the anti-cutback rule applies only to benefits accrued under a pension plan. Plaintiff's Opposition at 2-3. It cites ERISA's definition of "accrued benefit": "(A) in the case of a defined benefit plan, the individual's accrued benefit determined under the plan and, except as provided in section 1054(c)(3) of this title, expressed in the form of an annual benefit commencing at normal retirement age[.]" 29 U.S.C. § 1002(23). In addition, the part of ERISA in which the anti-cutback rule appears is also governed by 29 U.S.C. § 1051, which provides that "[t]his part shall apply to any employee benefit plan . . . other than (1) an employee welfare benefit plan[.]"

Courts have uniformly upheld this construction of the limits of the anti-cutback rule. *E.g., Anderson v. Suburban Teamsters of N. Illinois Pension Fund Bd. of Trustees*, 588 F.3d 641, 650 (9th Cir. 2009); *Arnold v. CSX Hotels, Inc.*, 112 Fed.Appx. 890, 892, 2004 WL 2423654, at **2 (4th Cir. Oct. 29, 2004); *Myers v. Bricklayers & Masons Local 22 Pension Plan*, No. 3:13-cv-75, 2013 WL 6178545, at *4 (S.D. Ohio Nov. 25, 2013); *Redd v. Brotherhood of Maintenance of Way Employees Div. of Intern'l Brotherhood of Teamsters,* No. 08-11457, 2010 WL 1286653, at *6 (E.D. Mich. Mar. 31, 2010).

None of the case law cited by the defendants in this regard, Defendants' Motion at 15-16, suggests otherwise. In *Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 741 (2004), the

Supreme Court dealt only with a pension plan and the effect of the anti-cutback rule on that plan. In *Bonneau v. Plumbers & Pipefitters Local Union 51 Pension Trust Fund*, 736 F.3d 33, 34 (1st Cir. 2013), the court was asked to determine whether a retroactively conferred benefit that could increase a worker's pension when he or she retired was subject to the anti-cutback rule. And, in *Cinotto v. Delta Air Lines, Inc.*, 674 F.3d 1285, 1286 (11th Cir. 2012), the court was asked to determine whether a particular amendment to a pension plan that decreased an employee's accrued benefit was subject to the anti-cutback rule.

The defendants' argument based on the anti-cutback rule cannot succeed.

### III. Conclusion

For the foregoing reasons, I recommend that the plaintiff's motion for judgment be **GRANTED** and that the defendants' motion for judgment be **DENIED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 24th day of November, 2014.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge